1   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (Bar No. 077785)

2   L. Timothy Fisher (Bar No. 191626)
Kathryn A. Schofield (Bar No. 202939)

3   2125 Oak Grove Road, Suite 120    **E-filing**
Walnut Creek, California 94598

4   Telephone: (925) 945-0200
Facsimile: (925) 945-8792

5

6   SCHIFFRIN & BARROWAY LLP
Eric L. Zagar

6   Sandra G. Smith

7   280 King of Prussia Road
Radnor, PA 19087

8   Telephone: (610) 667-7706
Facsimile: (610) 667-7056

9

Attorneys for Plaintiff

10

**FILED**

AUG 3 0 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
OAKLAND OF CALIFORNIA

Fee Paid
iss (1)

11               UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14   FRANK BROZOVICH, Derivatively on Behalf   Case No. **C06-05352**
of Nominal Defendant ACTEL

15   CORPORATION,                     **SHAREHOLDER DERIVATIVE
COMPLAINT**

16                         Plaintiff,

17        v.

18   JOHN C. EAST, ESMAT Z. HAMDY, PAUL
V. INDACO, FARES N. MUBARAK, DENNIS

19   G. KISH, HANK L. PERRET, DOUGLAS D.
GOODYEAR, JEFFREY M. SCHLAGETER,

20   DAVID M. SUGISHITA, DENNIS F. NYE,
CARL N.BURROW, ROBERT J. SMITH II,

21   ROBERT G. SPENCER and JACOB
JACOBSSON,

22
                      Defendants,

23

and,                        **JURY TRIAL DEMANDED**

24

25   ACTEL CORPORATION,

                 Nominal Defendant.

26

27

28
SHAREHOLDER DERIVATIVE COMPLAINT
CASE NO.
48517

**ORIGINAL**

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Actel Corporation ("Actel" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.      In gross breach of their fiduciary duties as officers and/or directors of Actel, the Individual Defendants (as defined herein) colluded with one another to:

(a)     improperly backdate dozens of grants of Actel stock options to Actel President and Chief Executive Officer John C. East and several other Actel executives, in violation of the Corporation's shareholder-approved stock option plans;

(b)     improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

(c)     improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Internal Revenue Code;

(d)     produce and disseminate to Actel shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.      As a result of the Individual Defendants' egregious misconduct, Actel has sustained millions of dollars in damages, and East and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

SHAREHOLDER DERIVATIVE COMPLAINT
48517

1

5.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6.      Plaintiff Frank Brozovich is, and was at all relevant times, a shareholder of nominal defendant Actel.

7.      Nominal defendant Actel is a California corporation with its principal executive offices located at 2061 Stierlin Court, Mountain View, California 94043.  According to its website, Actel designs, develops, and markets field programmable gate arrays (FPGAs) and supporting products and services.  FPGAs are used by manufacturers of automotive, communications, computer, consumer, industrial, military and aerospace, and other electronic systems to differentiate their products and get them to market faster.

8.      Defendant John C. East ("East") has been a director of Actel and served as President and Chief Executive Officer of the Company since 1988.

9.      Defendant Dr. Esmat Z. Hamdy ("Hamdy") serves as Actel's Senior Vice President of Technology and Operations, and is a founder of the Corporation and a co-inventor of Actel's PLICE antifuse technology.  In addition to serving as the Corporation's Senior Vice President of Technology and Operations since 1996, Hamdy has held a variety of management positions within the Company's technology and development group.

10.     Defendant Paul V. Indaco ("Indaco") has served as Actel's Vice President of Worldwide Sales since early in 1999.

11.     Defendant Fares N. Mubarak ("Mubarak") has served as Actel's Senior Vice President of Engineering since 2006.  Prior to being promoted to that position, Mubarak held a number of management and executive positions and has been responsible for all software and

SHAREHOLDER DERIVATIVE COMPLAINT
48517

2

1   hardware engineering since 1999.  Mubarak joined Actel in November 1992 as Director of Product

2   and Test Engineering.

3        12.    Defendant Dennis G. Kish ("Kish") served as Actel's Vice President of Marketing

4   prior to taking on the Vice President of Sales and Marketing position in 2006.  Kish has been with

5   Actel since 1999.

6        13.    Defendant Hank L. Perret ("Perret") has served as a director of Actel since January

7   2003.  Perret joined Actel as Controller in January 1996 and served as Vice President of Finance &

8   Chief Financial Officer from at least 1997 to 2000, and as a member of the Audit Committee from

9   at least September 2004.

10        14.    Defendant Douglas D. Goodyear ("Goodyear") served as Actel's Vice President of

11   Worldwide Sales in 1996 and 1997.

12        15.    Defendant Jeffrey M. Schlageter ("Schlageter") served as Actel's Senior Vice

13   President of Engineering from 1994 to 1996, and expanded his role to Senior Vice President of

14   Engineering and Corporate Programs in 1997.

15        16.    Defendant David M. Sugishita ("Sugishita") served as Actel's Senior Vice President

16   of Finance & Administration and Chief Financial Officer in 1995 and 1996.

17        17.    Defendant Dennis F. Nye ("Nye") served as Actel's Vice President of Strategic

18   Accounts from 1995 to 1997.

19        18.    Defendant Carl N. Burrow ("Burrow") served as Actel's Vice President of

20   Marketing from 1997 to 1999.

21        19.    Defendant Robert J. Smith, II ("Smith") served as Actel's Vice President of

22   Marketing in 1997 and 1998.

23        20.    Collectively, defendants East, Hamdy, Indaco, Mubarak, Kish, Perret, Goodyear,

24   Schlageter, Sugishita, Nye, Burrow and Smith are referred to herein as the "Officer Defendants."

25        21.    Defendant Robert G. Spencer ("Spencer") has served as a director of Actel since

26   February 1989.  Spencer has also served as a member of the Compensation Committee of the

27   Board (the "Compensation Committee") from at least 1996 to 1997 and since at least May 2005,

28

---

1   and as a member of the Audit Committee of the Board (the "Audit Committee") from at least April

2   1999 to September 2004.

3       22.    Defendant Jacob Jacobsson ("Jacobsson") has served as a director of Actel since

4   May 1998. Jacobsson has also served as a member of the Compensation Committee from January

5   1999 to at least September 2004, and as a member of the Audit Committee since at least May 2005.

6       23.    Collectively, defendants Spencer and Jacobsson are referred to herein as the

7   "Committee Defendants."

8       24.    Collectively, the Officer Defendants and Committee Defendants are referred to

9   herein as the "Individual Defendants."

10   **DUTIES OF THE INDIVIDUAL DEFENDANTS**

11       25.    By reason of their positions as officers and/or directors of the Company and because

12   of their ability to control the business and corporate affairs of the Company, the Individual

13   Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust,

14   loyalty, and due care, and were and are required to use their utmost ability to control and manage

15   the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are

16   required to act in furtherance of the best interests of the Company and its shareholders so as to

17   benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each

18   director and officer of the Company owes to the Company and its shareholders the fiduciary duty

19   to exercise good faith and diligence in the administration of the affairs of the Company and in the

20   use and preservation of its property and assets, and the highest obligations of fair dealing.

21       26.    The Individual Defendants, because of their positions of control and authority as

22   directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise

23   control over the wrongful acts complained of herein.

24       27.    To discharge their duties, the officers and directors of the Company were required to

25   exercise reasonable and prudent supervision over the management, policies, practices and controls

26   of the Company. By virtue of such duties, the officers and directors of the Company were required

27   to, among other things:

28

SHAREHOLDER DERIVATIVE COMPLAINT                4
48517

(a)     exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

(b)     exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

(c)     exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

(d)     exercise good faith in ensuring  that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

28.     The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

(1)     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)     transactions are executed in accordance with management's general or specific authorization;

(b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

29.    Actel's public filings provide that the Audit Committee shall be responsible for, among other things,

(a)    Monitoring the independent audit of Actel's consolidated financial statements in accordance with generally accepted auditing standards and issuing a report thereon; and

(b)    Conducting a review and discussion of the annual and interim financial statements and the Company 's SEC reports with Actel's management and registered independent public accounting firm to ensure that Actel's consolidated financial statements were prepared in accordance with generally accepted accounting principles.  In discussing Actel's audited financial statements, the Committee considers the registered public accounting firm's judgments about the quality, not just the acceptability of the accounting principles; the reasonableness of significant judgments; and the clarity of disclosures in the financial statements; and

(c)    The Committee shall make a recommendation to the Board as to whether the annual, audited financial statements should be included in the Company 's annual report on Form 10-K.

## FACTUAL ALLEGATIONS

### Stock Option Grants to the Officer Defendants

30.    At all times relevant hereto the Compensation Committee determined the salaries, incentive compensation, and stock option awards for executive officers of Actel and administered the Company's stock option plans.

31.    From 1996 to 2001, the Compensation Committee granted certain Actel stock options to the Officer Defendants, as follows:

/   /   /

/   /   /

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---|---|---|---|
| East | 7/17/96 | $14.875 | 60,000 |
| | 7/3/97 | $16.375 | 90,000 |
| | 7/28/98 | $10.063 | 120,000 |
| | 3/1/99 | $13.063 | 100,000 |
| | 8/6/99 | $13.563 | 60,000 |
| | 12/21/00 | $20.563 | 65,000 |
| | 7/31/01 | $21.90 | 125,000 |
| Hamdy | 1/5/96 | $10.625 | 21,750 |
| | 7/17/96 | $14.875 | 27,863 |
| | 7/3/97 | $16.375 | 23,700 |
| | 7/28/98 | $10.063 | 45,000 |
| | 3/1/99 | $13.063 | 30,000 |
| | 8/6/99 | $13.563 | 20,000 |
| | 12/21/00 | $20.563 | 38,000 |
| | 7/31/01 | $21.90 | 50,000 |
| Indaco | 3/1/99 | $13.063 | 140,000 |
| | 8/6/99 | $13.563 | 15,000 |
| | 12/21/00 | $20.563 | 27,000 |
| | 7/31/01 | $21.90 | 50,000 |
| Mubarak | 3/1/99 | $13.063 | 30,000 |
| | 8/6/99 | $13.563 | 20,000 |
| | 12/21/00 | $20.563 | 40,000 |
| | 7/31/01 | $21.90 | 50,000 |
| Kish | 7/31/01 | $21.90 | 50,000 |
| Perret | 7/28/98 | $10.063 | 47,842 |
| | 12/21/00 | $20.563 | 38,000 |
| Goodyear | 7/17/96 | $14.875 | 15,000 |
| | 7/3/97 | $16.375 | 31,250 |
| Schlageter | 1/5/96 | $10.625 | 21,750 |
| | 7/17/96 | $14.875 | 29,438 |
| | 7/3/97 | $$16.375 | 9,000 |
| Sugishita | 1/5/96 | $10.625 | 75,000 |
| | 7/17/96 | $14.875 | 23,440 |
| Nye | 7/3/97 | $16.375 | 16,000 |

SHAREHOLDER DERIVATIVE COMPLAINT
48517

7

| Burrow | 7/28/98 | $10.063 | 43,750 |
| | 3/1/99 | $13.063 | 30,000 |
| | 8/6/99 | $13.563 | 20,000 |
| Smith | 7/28/98 | $10.063 | 25,000 |

32.    Pursuant to the terms of the Company's shareholder-approved stock option plan, the exercise price of options must be no less than the closing price of Actel stock on the date of grant.

33.    Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the Company must recognize the difference as an expense.

34.    Pursuant to Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

35.    In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Actel's stock price, as demonstrated in the following chart:

**Summary of Option Grants and Surrounding Stock Price Performance**

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 1/5/96 | $10.625 | $11.00 | $12.25 | 15.3% |
| 7/17/96 | $14.875 | $18.00 | $16.25 | 9.2% |
| 7/3/97 | $16.375 | $19.37 | $18.50 | 13% |
| 7/28/98 | $10.063 | $12.88 | $12.25 | 21.7% |

| | 3/1/99 | $13.063 | $15.00 | $14.00 | 7.2% |
|---|---|---|---|---|---|
| | 8/6/99 | $13.563 | $14.69 | $14.75 | 8.8% |
| | 12/21/00 | $20.563 | $26.875 | $25.5625 | 24.3% |
| | 7/31/01 | $21.90 | $23.28 | $23.05 | 5.3% |

36.     The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Actel stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

**Dissemination of False Financial Statements**

37.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

 (a) violated the terms of the Corporation's shareholder-approved stock option plans;

 (b) violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

 (c) violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

 (d) produced and disseminated to Actel shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

38.     The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

SHAREHOLDER DERIVATIVE COMPLAINT
48517

9

1

(a)     Form 10-K for fiscal year ended December 29, 1996, filed with the SEC on

2

March 31, 1997 and signed by defendants East and Spencer;

3

(b)     Form 10-K for fiscal year ended December 28, 1997, filed with the SEC on

4

March 31, 1998 and signed by defendants East, Perret and Spencer;

5

(c)     Form 10-K for fiscal year ended January 3, 1999, filed with the SEC on

6

April 5, 1999 and signed by defendants East, Perret, Jacobsson and Spencer;

7

(d)     Form 10-K for year ended January 2, 2000, filed with the SEC on April 3,

8

2000 and signed by defendants East, Perret, Jacobsson and Spencer;

9

(e)     Form 10-K for fiscal year ended December 31, 2000, filed with the SEC on

10

April 2, 2001 and signed by defendants East, Perret, Jacobsson and Spencer;

11

and

12

(f)     Form 10-K for fiscal year ended January 6, 2002, filed with the SEC on

13

April 8, 2002 and signed by defendants East, Perret, Jacobsson and Spencer.

14

39.     Furthermore, from 1997 to 2002, the Company, with the knowledge, approval, and

15

participation of each of the Individual Defendants, for the purpose and with the effect of concealing

16

the improper option backdating, disseminated to shareholders and filed with the SEC annual proxy

17

statements that falsely reported the dates of stock option grants to the Officer Defendants.

18

**THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES**

19

40.     The Officer Defendants breached their fiduciary duties by:

20

(a)     colluding with the Committee Defendants to backdate stock option grants;

21

(b)     colluding with the Committee Defendant to violate GAAP and Section

22

162(m);

23

(c)     colluding with the other Individual Defendants to produce and disseminate

24

to Actel shareholders and the market false financial statements that

25

improperly recorded and accounted for the backdated option grants and

26

concealed the improper backdating of stock options; and

27

28

SHAREHOLDER DERIVATIVE COMPLAINT
48517

10

1        (d)       colluding with the other Individual Defendants to file false proxy statements

2                   and false financial statements in order to conceal the improper backdating of

3                   stock options.

4       41.    The Officer Defendants' foregoing misconduct was not, and could not have been, an

5 exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the

6 Officer Defendants at the expense of the Corporation.

7       42.    The Committee Defendants breached their fiduciary duties by:

8        (a)       colluding with the Officer Defendants to backdate stock option grants;

9        (b)       colluding with the Officer Defendants to violate GAAP and Section 162(m);

10       (c)       colluding with the other Individual Defendants to produce and disseminate

11                  to Actel shareholders and the market false financial statements that

12                  improperly recorded and accounted for the backdated option grants and

13                  concealed the improper backdating of stock options; and

14       (d)       colluding with the other Individual Defendants to file false proxy statements

15                  and false financial statements in order to conceal the improper backdating of

16                  stock options.

17       43.    The Committee Defendants' foregoing misconduct was not, and could not have

18 been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly

19 benefit the Officer Defendants at the expense of the Corporation.

20       44.    As a direct and proximate result of the Individual Defendants' foregoing breaches of

21 fiduciary duties, the Company has sustained millions of dollars in damages, including, but not

22 limited to, the additional compensation expenses and tax liabilities the Company was required to

23 incur and loss of funds paid to the Company upon exercise of options.

24                 **DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

25       45.    Plaintiff brings this action derivatively in the right and for the benefit of the

26 Corporation to redress defendants' breaches of fiduciary duties and unjust enrichment.

27       46.    Plaintiff is an owner of Actel common stock and was an owner of Actel common

28 stock at all times relevant hereto.

1      47.    Plaintiff will adequately and fairly represent the interests of the Company and its

2  shareholders in enforcing and prosecuting its rights.

3      48.    As a result of the facts set forth herein, plaintiff has not made any demand on the

4  Actel Board of Directors to institute this action against the Individual Defendants.  Such demand

5  would be a futile and useless act because the Board is incapable of making an independent and

6  disinterested decision to institute and vigorously prosecute this action.

7      49.    The Board currently consists of six directors: defendants East, Perret, Jacobsson,

8  and Spencer and directors Daniel McCranie, and director James R. Fiebiger.  The following

9  directors are incapable of independently and disinterestedly considering a demand to commence

10  and vigorously prosecute this action:

11      (a)    East and Perret, because they are directly interested in the improperly backdated

12             stock option grants complained of herein;

13      (b)    Spencer and Jacobsson, because as members of the Compensation Committee they

14             directly participated in and approved the improper backdating of stock options, as

15             alleged herein.  Moreover, by colluding with the Officer Defendants and others, as

16             alleged herein, Spencer and Jacobsson have demonstrated that they are unable or

17             unwilling to act independently of the Officer Defendants;

18      (c)    Spencer, because as a member of the Audit Committee he directly participated in

19             and approved the Corporation's violations of GAAP and Section 162(m), as alleged

20             herein.  Moreover, by colluding with the Officer Defendants and others, as alleged

21             herein, Spencer has demonstrated that he is unable or unwilling to act independently

22             of the Officer Defendants;

23      (d)    East, Perret, Spencer and Jacobsson, because as directors of the Corporation they

24             directly participated in and approved the Corporation's filing of false financial

25             statements and other SEC filings, as alleged herein.  Moreover, by colluding with

26             the Officer Defendants and others, as alleged herein, East, Perret, Spencer and

27             Jacobsson have demonstrated that they are unable or unwilling to act independently

28             of the Officer Defendants.

SHAREHOLDER DERIVATIVE COMPLAINT                                                        12
48517

50.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR BREACH OF FIDUCIARY DUTY

51.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

52.    As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

53.    As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

    (a)    colluding with the Committee Defendants to backdate stock option grants;

    (b)    colluding with the Committee Defendant to violate GAAP and Section 162(m);

    (c)    colluding with the other Individual Defendants to produce and disseminate to Actel shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    (d)    colluding with the other Individual Defendants to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

54.    The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Corporation.

55.    As alleged in detail herein, the Committee Defendants breached their fiduciary duties by:

    (a)    colluding with the Officer Defendants to backdate stock option grants;

SHAREHOLDER DERIVATIVE COMPLAINT
48517

13

(b)    colluding with the Officer Defendants to violate GAAP and Section 162(m);

(c)    colluding with the other Individual Defendants to produce and disseminate to Actel shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

(d)    colluding with the other Individual Defendants to file false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

56.    The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Corporation.

57.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT II

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
### EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER

58.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

59.    Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

60.    The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Actel common stock.

61.    As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional

SHAREHOLDER DERIVATIVE COMPLAINT
48517

14

compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR COMMON LAW RESTITUTION/UNJUST ENRICHMENT

62.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

63.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

64.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

    A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

    B.     Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

    C.     Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

    D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

    E.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

## CERTIFICATION OF INTEREST ENTITIES OR PERSONS

Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties there is no such interest to report.

Respectfully submitted,

Dated: August 30, 2006        BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

_____

Kathryn A. Schofield

Alan R. Plutzik
L. Timothy Fisher
Kathryn A. Schofield
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

SCHIFFRIN & BARROWAY LLP
Eric L. Zagar
Sandra G. Smith
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Attorneys for Plaintiff

SHAREHOLDER DERIVATIVE COMPLAINT
48517

16

## ACTEL CORPORATION VERIFICATION

I, Frank W. Brozovich, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.


DATE: ___8/09/06___          _Frank W. Brozovich_
                              SIGNATURE